UNITED STATES COURT OF FEDERAL CLAIMS

CASE NO.:  1:18-cv-01851-EJD

APL MICROSCOPIC, LLC,

          Plaintiff,

v.

THE UNITED STATES OF AMERICA,

          Defendant.

_____

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON THE ISSUE OF THE
DISTRIBUTION RIGHT UNDER 17 U.S.C § 106(3)**

Plaintiff APL Microscopic, LLC, per the Court's July 23, 2019 Order, respectfully submits the following Supplemental Brief in further opposition to the Government's Motion to Dismiss.

**I.      QUESTION PRESENTED**

Does a public distribution occur when the owner of a website uploads a protected work on its server (without authorization) so that it is made available for viewing and downloading by individual computer users who access the relevant page on the website, or, does a distribution occur when—and each time—an individual computer user accesses the relevant page on the website?

**II.     BRIEF ANSWER**

Public distribution occurs -- and the copyright holder's exclusive distribution right under § 106(3) is violated -- each and every time a computer user accesses the defendant's website displaying the protected work. This is because every time a computer user accesses the defendant's website displaying the protected work, the defendant distributes the work to the computer user through the internet. The defendant sends information for the relevant page

including the protected work to the computer user whose computer assembles the information for display on the user's computer. The copyright holder's distribution right is violated every time the user visits the defendant's website.

III.   **PUBLIC DISTRIBUTION IN VIOLATION OF 17 U.S.C. § 106(3) OCCURS EACH AND EVERY TIME AN INDIVIDUAL COMPUTER USER ACESSES A WEB PAGE DISPLAYING A COPYRIGHTED IMAGE.**

a.   **Requirements for Distribution under the Copyright Act.**

A copyright owner has the exclusive right "to distribute copies… the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3). "Copies" is defined in the Copyright Act as "material objects . . . in which a work is fixed." 17 U.S.C. § 101. However, the Act fails to define distribute or distribution. See *Elektra Entm't Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 240 (S.D.N.Y. 2008) ("The word 'distribute,' ... is not defined in the Copyright Act."); *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981 (D. Ariz. 2008) ("The statute does not define the term distribute"). For that definition, courts have looked to "the statute's plain meaning and legislative history." *Id*.

Copies can be distributed electronically. See *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007). In the electronic context, distribution has been held to include electronic distribution of individual copies of articles in online news databases. See *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 498 (2001). Distribution has also been defined as the transmission of photographic images electronically to the user's computer. See *Perfect 10,* 508 F.3d at 1162; see also *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 173 (D. Mass. 2008)("An electronic file transfer is plainly within the sort of transaction that § 106(3) was intended to reach.").

### b.     Requirements for Online Distribution are Met.

To distribute online, first there must be "an identifiable copy of the work to change hands in one of the prescribed ways for there to be a distribution." *Rosen v. eBay, Inc.*, No. CV 13-6801-MWF (Ex), 2018 U.S. Dist. LEXIS 222728, at \*11 (C.D. Cal. Jan. 24, 2018) quoting *Atlantic Recording,* 554 F. Supp. 2d at 976. "The general rule, supported by the great weight of authority, is that 'infringement … requires an actual dissemination of either copies or phonorecords.'" *Atlantic Recording,* 554 F. Supp. 2d at 981, quoting *Nat'l Car Rental Sys. v. Computer Assocs. Int'l, Inc.,* 991 F.2d 426, 434 (8th Cir. 1993).

For photographs, there are several ways that a copy of an image can "change hands." One way[1], and the undisputed method of distribution used by the defendant here, is for the defendant to save the copy of the image on its website server for the world to see, and for a computer user to visit the defendant's web page to view the image.[2] When the computer user visits the web page, a copy of the image is transferred from the defendant's website server to the computer user so that the image can be displayed on the user's computer screen. See *Perfect 10*, 508 F.3d at 1162 ("the website publisher's computer … distributes copies of the images by transmitting the

---

[1] Another way -- and the way often implicated in copyright display right violation cases -- is to display the image via a link to third party's server. See, e.g., *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 595 (S.D.N.Y. 2018) (defendants embedded a link to plaintiff's image in a tweet); *Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B, 2017 U.S. Dist. LEXIS 193555, at \*31-32 (N.D. Tex. Nov. 22, 2017) (display by website framing); *Flava Works, Inc v. Gunter*, No. 10 C 6517, 2011 U.S. Dist. LEXIS 98451, at \*9 (N.D. Ill. Sep. 1, 2011)(display of videos by linking to third party server). That method of distribution is also not relevant here since the undisputed facts are that the defendant stored the copy of APL's image on its own servers.

[2] The Ninth Circuit in Perfect 10 explained this process in more detail:

> Computer owners can provide information stored on their computers to other users connected to the Internet through a medium called a webpage. A webpage consists of text interspersed with instructions written in Hypertext Markup Language ("HTML") that is stored in a computer. No images are stored on a webpage; rather, the HTML instructions on the webpage provide an address for where the images are stored, whether in the webpage publisher's computer or some other computer. In general, webpages are publicly available and can be accessed by computers connected to the Internet through the use of a web browser.

*Perfect 10*, 508 F.3d at 1155.

photographic image electronically to the user's computer."). In the internet context, this means a "transfer of a file from one computer to another." *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006). Distribution is complete when "the receiving computer assembles the transmitted information into a complete image that can be 'perceived.'" *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 120 (D.D.C. 2018).

Transfer of an image file from one computer to another is distribution in violation of § 106(3). See *Warner Bros. Records, Inc. v. Walker*, 704 F. Supp. 2d 460, 467 (W.D. Pa. 2010)(downloading of copies of copyrighted work placed online by defendant "establish[ed] unauthorized distribution [of]… recordings."); *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 651 (S.D.N.Y. 2013)(distribution occurs where consumers purchase copyrighted products online); *Miller v. Facebook, Inc.*, No. C 10-00264 WHA, 2010 U.S. Dist. LEXIS 61715, at *15 (N.D. Cal. May 27, 2010)(distribution found where users downloaded the copyright works and it was saved to the user's cache).

An image is distributed each time a user accesses a webpage that contains that image. *Miller v. Facebook, Inc.*, No. C 10-00264 WHA, 2010 U.S. Dist. LEXIS 61715, at *15 (N.D. Cal. May 27, 2010). Once an image is placed on a website, the image is continuously distributed each time a user visits that website. *Id.* When a user visits a website, the images on that website are stored in the computer's cache memory. *Id.* The internal cache then "saves copies of webpages and images that the user has recently viewed so that the user can more rapidly revisit these webpages and images." *Id.* (citing *Perfect 10 v. Amazon.com*, 508 F.3d at 1156 n.3). In more practical terms, each time a user accesses a webpage, copies of the images contained on the webpage are distributed and locally saved to the user's device. *Id.*  This caching process results in the distribution of images. *Id.*  at *15-16. *See also Live Face on Web, LLC v. Absonutrix, LLC,*

No. 1:17cv937, 2018 U.S. Dist. LEXIS 80017, at *4 (M.D.N.C. May 8, 2018) ("As a result of

the modifications to the Defendants' Website . . . when a web browser retrieves a page from the

Defendants' Website, a copy of the infringing version of the LFOW Software is distributed by

Defendants to the website visitor and stored on the visitor's computer in cache, memory, and/or

its hard drive. Accordingly, each visit to the Defendants' Website is a new act of copyright

infringement." (Id., ¶ 28.) In sum, LFOW contends that, in modifying their website to link to the

"ip_player.js" file stored on a third-party server, Defendants engaged in "direct, indirect and/or

vicarious infringement of registered copyright(s)."); *Live Face On Web, LLC v. Biblio Holdings*

*LLC*, 2016 U.S. Dist. LEXIS 124198, at *11 (S.D.N.Y. Sep. 12, 2016); *Live Face on Web, LLC*

*v. Emerson Cleaners, Inc.*, 66 F. Supp. 3d 551, 555-56 (D.N.J. 2014); *Live Face on Web, LLC v.*

*Unlimited Office Sols., LLC*, No. 14-3777 (JEI/AMD), 2014 U.S. Dist. LEXIS 171401, at *8-9

(D.N.J. Dec. 11, 2014).

    In 2010, the court in *Miller v. Facebook, Inc*. held that it is reasonable to infer that a

video game had been distributed once saved to the cache memory of a user's computer. *Id.* At

issue before the court in that case was whether the plaintiff's exclusive right to distribute was

violated when the defendant allowed users to download a video game where it was being hosted

to the local cache memory of any Facebook user who played the ChainRxn video game. *Id.*at *5

In determining that the defendant violated the plaintiff's exclusive right to distribute, the court

stated that:

> content accessed by a user over the Internet is routinely stored locally on the user's
> computer in what is called cache memory. *See* 508 F.3d at 1156 n.3 (defining
> "cache" memory as "computer memory with very short access time used for
> storage of frequently or recently used instructions or data " and explaining that a
> user's personal computer "has an internal cache that saves copies of webpages
> and images that the user has recently viewed so that the user can more rapidly
> revisit these webpages and images."). It is a reasonable inference that the

ChainRxn video game was distributed by defendant Yeo to members of the public through this routine "caching" process.

*Id.* at *14-15.

As in *Miller*, APL's exclusive right to distribute is violated, each and every time, a user accesses the NASA webpage. Upon visiting the NASA website, the image on the website are distributed and stored into the user's cache memory.

The transfer of a copy—and thus, distribution— occurs each time individuals access the website. That is exactly what happens every time a user visits the defendant's website with the plaintiff's copyrighted image.

### c.    The Volitional Conduct Requirement is Met Here.

Plaintiff anticipates that the Government will claim it engaged in no volitional conduct for which it can be liable for distribution. If the Government makes this argument, it fails for the simple reason that the Government's original act of copying plaintiff's copyrighted image to the NASA web server for display on its website satisfied the volitional conduct requirement.

"A defendant may be held directly liable only if it has engaged in volitional conduct that violates the Act." *ABC, Inc. v. Aereo, Inc.*, 573 U.S. 431, 453 (2014). "[T]he volitional-act requirement demands conduct directed to the plaintiff's copyrighted material." *Id*. In the context of image distribution on the internet, distribution that happens "automatically" as a result of user requests with no involvement of the defendant fails to satisfy the volitional conduct requirement. See, e.g., *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 669 (9th Cir. 2017) (where subscribers to defendants' Usenet services stored tens of thousands of adult images on defendants' servers without defendants' involvement and solely at the instigation of others, volitional conduct by defendants was lacking).

**SRIPLAW**
21301 Powerline Road, Suite 100, Boca Raton, Florida 33433

Active participation in infringing activities satisfies the volitional conduct requirement. See *Playboy Enters. v. Russ Hardenburgh*, 982 F. Supp. 503, 505 (N.D. Ohio 1997) (bulletin board owner's policies of active participation in the infringing activities and the fact that owner induced, caused, and materially contributed to the infringing activity that took place on the bulletin board was sufficient to show volitional conduct). The volitional conduct requirement is satisfied here by the Government's act of posting plaintiff's copyrighted image to its website in the first instance. See *ReDigi,* 934 F. Supp. 2d at 657 ("The fact that ReDigi's founders programmed their software to choose copyrighted content satisfies the volitional conduct requirement and renders ReDigi's case indistinguishable from those where human review of content gave rise to direct liability.")

## IV.    CONCLUSION

Distribution occurs, and § 106(3) is violated, each time an individual computer user accessed the Government's website displaying a copy of APL's copyrighted image posted there by NASA. When that occurred, the image was transmitted to the computer user by the Government.  The computer user's computer assembled the transmitted information into a perceivable image. When that occurred, APL's distribution right was violated.

DATED: August 6, 2019                      Respectfully submitted,


*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar No. 98220
joel.rothman@sriplaw.com

**SRIPLAW**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile
*Attorneys for Plaintiff APL Microscopic, LLC*

7

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on August 6, 2019, a true and correct copy of the foregoing document was served by electronic mail by the Court's CM/ECF System to all parties listed below on the Service List.

*/s/ Joel B. Rothman* _____
JOEL B. ROTHMAN

## <u>SERVICE LIST</u>

Mr. Patrick C. Holvey
Department of Justice
2200 L Street, NW
Room 8512
Washington, DC 20005
Patrick.c.holvey@usdoj.gov
Attorneys for Defendants